UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| LOUIS C. AYCOCK | CIVIL ACTION |
|---|---|
| VERSUS | NO: 11-2088-ILRL-SS |
| MICHAEL J ASTRUE COMMISSIONER SOCIAL SECURITY ADMINISTRATION | |

## REPORT AND RECOMMENDATION

The plaintiff, Louis C. Aycock ("Aycock"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits and a period of disability under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, as well as his claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).

## PROCEDURAL HISTORY

On January 3, 2005, Aycock submitted applications for benefits. R. 66–74. He alleged that he became disabled on December 4, 2007. He reported that he had filed a previous application for benefits. R. 66. On March 28, 2007, he submitted applications for benefits, r. 75-82, alleging that he became unable to work on June 23, 2006. R. 75. On September 9, 2008, Donna Verret filed an application for benefits for a child, Kimberly Aycock with Louis Aycock being listed as the insured worker. R. 83–89. Aycock received a closed period of disability. R. 25-26.

On January 26, 2009, Aycock submitted applications for benefits. R. 90-96. He alleged that he became disabled on July 15, 2008. R. 90. He reported that he was unable to work because of

seizures, sleeping disorder and back problems. R. 149. On August 28, 2009, the January 26, 2009 applications were denied. The Social Security Administration considered records from Chabert Medical Center, Point of Care Health Houma and The Therapy Group. R. 43-46. On December 9, 2009, there was a hearing before an Administrative Law Judge ("ALJ"). R. 22. On January 25, 2010, there was an unfavorable decision. R. 9-21. On June 24, 2011, the Appeals Council denied Aycock's request for review. R. 1-3.

On August 9, 2011, Aycock filed a complaint in federal court. Rec. doc. 1. The Commissioner answered the complaint. Rec. docs. 8 and 9. Aycock did not file a motion for summary judgment in accord with the scheduling order. Rec. doc. 11. His request for additional time was granted. R. 12. On January 31, 2012, he submitted a motion for summary judgment. It listed: (1) his employers; (2) the medication he was taking; (3) a brief description of his neurological disorder; (4) a request for disability benefits; (5) a statement of limitations; and (6) a two page checkmark form for symptoms associated with a degenerative neurological disease completed by Michael P. Charlet, MD. dated May 12, 2010. Rec. doc. 13. The Commissioner filed a cross-motion for summary judgment. R. 16.

Aycock is not represented by counsel in these proceedings.

## STATEMENT OF ISSUES ON APPEAL

1. Did Aycock demonstrate that he had severe impairments of migraines, right eye blindness, and bilateral hand weakness and numbness?

2. Does substantial evidence support the ALJ's residual functional capacity ("RFC") determination?

3. Has Aycock demonstrated that there is new evidence which is material?

4. Has Aycock failed to satisfy his step four burden of demonstrating that he was unable to perform his past relevant work?

**THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL**

The ALJ made the following findings relevant to the issues on appeal:

1. Aycock met the insured status requirements of the Act through December 31, 2011.

2. Aycock had not engaged in substantial gainful activity since July 15, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Aycock had the following severe impairments: seizure disorder and hereditary spastic paraplegia (20 CFR 404.1520(c)).[1]

4. Aycock did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Aycock had the RFC to perform medium work as defined in 20 CFR 404.1567(c) except no work around dangerous machinery and heights; slight to moderate limitations in his ability to maintain attention and concentration for extended periods; the need to miss work once a month; and the need for primarily oral instructions.

6. Aycock was capable of performing past relevant work as a cashier. This work did not require the performance of work related activities precluded by Aycock's RFC (20 CFR 404.1565).

7. Aycock was not under a disability, as defined in the Act, from July 15, 2008 through the date of the decision (20 CFR 404.1520(f)).

R. 14-17.

## ANALYSIS

a. **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.

---

[1] Hereditary spastic paraplegia ("HSP"), also called familial spastic paraparesis (FSP), refers to a group of inherited disorders that are characterized by progressive weakness and spasticity (stiffness) of the legs. http://www.ninds.nih.gov/disorders/hereditary_spastic_paraplegia/hereditary_spastic_paraplegia. It is also referred to as hereditary spastic paraparesis. See R. 198.

Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599

4

& appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[2] The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

"In determining whether substantial evidence of disability exists, this court weighs four

---

[2] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective medical evidence of pain and disability; and (4) the claimant's age, education, and work history." Perez, 415 F.3d at 462. "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

b. **Testimony at the Hearing.**

Aycock was 41 at the time of the hearing in 2009. R. 25.

In 2004, he worked as a truck driver and had done so for eight years. R. 29. He drove a van carrying oil field workers. R. 29. During this time he also worked as a shipping and receiving clerk. R. 35. Because of the seizures, he was laid off in 2006. The company told him that it could not take the risk of him driving with the seizures. R. 29-30. He collected workers compensation in 2006 and 2007 and did not work. R. 28. He received disability for a closed period. R. 25-26.

In 2008, he worked at Shop-Rite as a cashier before he was fired. R. 26-28. After he was fired, he worked at Cash Magic for six or seven months as a cashier. R. 27-28. In April 2009, he worked part time at Shop-Rite. He was fired a few months before Halloween in 2009. R. 27. He worked between 32 and 40 hours per week and was paid between seven and nine dollars an hour. R. 27. He was unable to find another job because of his seizures. R. 28.

Aycock could not recall having a seizure while working. R. 30. He took medication for his seizures which worked fairly well. R. 30. His last seizure was on August 20, 2009. R. 31. At that time he had seizures about every week. R. 31. He was diagnosed with HSP which affects the low muscle mass in his legs. R. 31. He walked with a limp or a cane. R. 31. He saw his doctors about once a month. R. 33. He was not seeing doctors at any place other than Chabert. R. 34.

There was testimony from a vocational expert, who opined that he could return to his past relevant work as a cashier (light work). R. 34-39.

c. **Medical Evidence**.

On August 17, 2006, Aycock was seen for a routine appointment and refills of his medication. He was to return in three months. R. 191. On April 19, 2007, there was a routine appointment. Laboratory work was scheduled. R. 243. He was to continue with his medication and return in six months. R. 245.

On April 11, 2008, Aycock was seen at Leonard J. Chabert Medical Center ("Chabert") for complaints of back pain. He reported that his last seizure was at the end of March. Medication was prescribed. He was to return in four to six weeks. R. 200. On May 30, 2008, he returned to Chabert. He was to return in three months. R. 199. On November 6, 2008, he returned Chabert. He reported much better control of the seizures. The HSP was not progressing. He was to return in six months. R. 198.

On January 12, 2009, physical therapy was ordered for his HSP. R. 213-14. On February 11, 2009, he was evaluated for physical therapy. He reported a history of seizures, migraines, depression, arthritis, restless leg syndrome and being blind in the right eye. He reported that an MRI of his spine and brain was normal. His main complaint was that he walked funny. R. 206-07. He was seen for PT in February, March and April.[3]

On April 18, 2009, Aycock was seen by Alanna Small, M.D., with Point of Care Health Solutions for a consultative examination. R. 217-220.

---

[3] He was seen on February 17, March 2, 6, 9, 13, 19, 25 and 27, and April 2, 7, 15, 17, 20 and 22. He failed to appear for an appointment on April 29. R. 203-05, 208-11, and 232-236.

On June 1, 2009, Aycock returned Chabert to for a follow-up visit. R. 238-40. On September 4, 2009, he returned to Chabert. He reported that his last seizure was on August 20, 2009. His prescriptions were refilled. He was to return in four to five months. He was seen by Michael Charlet, M.D. R. 249.

On May 12, 2010, Dr. Charlet completed a form for degenerative neurological disease. Rec. doc. 13 (Attachment).

d.      **Plaintiff's Appeal.**

Issue No. 1.   Did Aycock demonstrate that he had severe impairments of migraines, right eye blindness, and bilateral hand weakness and numbness?

Aycock's motion for summary judgment does not contain a statement of errors as required by the scheduling order. Rec. doc. 5. Pro se plaintiffs are accorded a liberal construction of properly filed pleadings. Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981). On the first page of his motion, Aycock states that he is blind in his right eye. Rec. doc. 13 at 1. His motion for summary judgment also contains the following:

> Hereditary spastic paraplegia is a group of rare inherited neurological disorders. Their primary symptoms are progressive spasticity and weakness of the leg and hip muscles.
>
> I deserve to get disability. I can catch seizures anytime. I often get migraines three or more times a week and I have to lay down in a darkroom. I have weakness and numbness in my hands and fingers.

Rec. doc. 13 at 5. Based on Aycock's filing, the Commissioner identified four alleged errors.

The first concerns Aycock's statements concerning migraines, right eye blindness, and bilateral hand weakness and numbness. When he submitted his January 2009 applications for benefits, he did not mention these conditions as preventing him from working. He reported that he was unable to work because of seizures, sleeping disorder and back problems. R. 149. The ALJ

determined that he had the following severe impairments: seizure disorder and HSP. R. 14. The Commissioner contends that he has not presented evidence that the right eye blindness, migraines, and bilateral hand weakness and numbness are severe impairments.

Dr. Small noted a normal ocular examination and reported that Aycock presented normal vision testing results. R. 218-19. The past medical history for the February 11, 2009 PT evaluation included right eye blindness. There is no other medical evidence of a problem with Aycock's right eye. There is substantial evidence that right eye blindness was not a severe impairment.

Although Aycock alleges that he experiences migraines three or more times a week, the administrative record does not reveal that he reported severe migraines to any health care provider. There is no diagnosis of severe headaches.

Aycock alleges bilateral hand weakness and numbness. Dr. Small, however, noted normal grip strength, no sign of muscle atrophy, normal range of motion for all extremities, full muscle strength in all major muscle groups, and normal reflex and sensation. R. 219-200.

Although Aycock alleges that he also is disabled due to migraines, right eye blindness, and bilateral weakness and numbness in his hands, substantial evidence supports the ALJ's determination that his only severe impairments were HSP and a seizure disorder. R. 14- 15.

Issue No. 2. Does substantial evidence support the ALJ's RFC determination?

The ALJ determined that Aycock had the RFC to perform medium work subject to certain limitations. The ALJ found that Aycock's statement of his limitations was not credible. For example, he testified that he could not read or write. The ALJ, however, noted that his past relevant work included working as a shipping clerk and that this job would require a "rudimentary ability to read and write. . . ." R. 16. The ALJ also noted that Aycock completed a Disability Report - Work

9

History (R. 159-167) and Function Report - Adult (R. 168-176) in his own handwriting. He reported to the physical therapist that he read the handouts and they were helpful. R. 210.

On December 9, 2009 Aycock testified that his last seizure was on about August 20, 2009. R. 31. Prior to that he was having seizures every other day or at least once a week. R. 31. Yet, on April 18, 2009, he told Dr. Small that he had a seizure about once a week to once a month. R. 217. There is substantial evidence to support the finding that Aycock's statements concerning his symptoms were not credible.

The treatment notes for November 6, 2008 at Chabert reflect that: (1) there was much better control over his seizures; (2) the spasticity was not progressing; (3) his gait was only mildly spastic; and (4) he was to return in six months. R. 198.

Aycock submitted his last applications for benefits on January 26, 2009. R. 90-96. In an undated Function Report - Adult, he indicated that: (1) his daily activities included going to work (R. 169); (2) he had no difficulty with personal care (R. 170); (3) he could drive (R. 170 and 172); (4) he walked a little funny (R. 172 and 174); and (5) he did not use an assistive device to ambulate (R. 175). In the portion of the Work History Report concerning his cashier jobs, he reported that he could walk three hours a day, stand three hours a day, and sit for one hour a day for a total of seven hours a day, four days a week and he frequently lifted 25 pounds performing this job. R. 163.

Although Aycock's January 26, 2009 applications for benefits indicated that he became unable to work on July 15, 2008, he reported to the physical therapist on February 11, 2009 that he worked full time as a stocker. His main complaint was that he walked "funny." R. 206. On March 13, 2009, he demonstrated improved gait on the treadmill. R. 210. At the fifth physical therapy session on March 19, Aycock reported no complaints. The therapist noted improvement. R. 212.

On April 8, 2009, Dr. Small noted that: (1) all joints were intact and within a normal range of motion (R. 219); (2) muscle strength was 5/5 in all major muscle groups (R. 220); and (3) Aycock was able to perform all exam maneuvers with no signs of atrophy or spasticity in his lower extremity (R. 220).

Aycock worked about 32 to 40 hours a week until October 2009. R. 27. On November 4, 2009, he was seen by Dr. Charlet at Chabert and Aycock reported that his "HSP is well-managed and [he is] satisfied with results" R. 249. At the December 9, 2009 administrative hearing, Aycock testified that the increased dosage of seizure medication was helping and he had not had a seizure in approximately four months. R. 31.

The ALJ's determination that Aycock could perform medium work is demonstrated by his ability to work during the relevant period, the reports in the medical records that his HSP was controlled and not progressing, and his own statements concerning his activities. Substantial evidence supports the ALJ's determination that Aycock had an RFC for modified medium work.

<u>Issue No. 3.</u>   Has Aycock demonstrated that there is new evidence which is material?

On September 4, 2009, Aycock was seen by Dr. Charlet at Chabert for a follow-up visit. The notes reflect that Aycock reported that his HSP was well controlled and he was satisfied with the results. His medications were refilled. He was told to return in four to five months. R. 249. The ALJ's decision was entered on January 25, 2010. R. 21. On May 12, 2010, Dr. Charlet completed a two page questionnaire form for degenerative neurological disease. The responses indicate that Aycock could not perform medium work. Dr. Charlet reported that his answers would have been different during the course of his treatment. By way of explanation, Dr. Charlet stated that "[e]xam

11

has progressed over time." Rec. doc. 13 (Attachment). The May 12, 2010 checkmark report was not presented to the Appeals Council. It did not rule until June 24, 2011. R. 1-3.

Aycock attached the report from Dr. Charlet to support his contention that he cannot perform the modified medium level of work described by the ALJ. Rec. Doc.13 (Attachment). The issue is whether the proceeding should be remanded for the consideration of the newly presented evidence. Ellis v. Bowen, 820 F.2d 682, 684 (5th Cir. 1987).

Under 42 U.S.C. § 405(g) a claimant's motion to remand is to be granted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . ." In order to justify a remand:

1. The evidence must be new and not merely cumulative of what is already in the record;

2. The evidence must be material; it must be relevant, probative, and likely to have changed the outcome of the Commissioner's determination; and

3. The plaintiff must demonstrate good cause for not having incorporated the new evidence into the administrative record.

Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989). In Castillo v. Barnhard, 325 F.3d 550 (5th Cir. 2003), the Fifth Circuit stated that "[n]ew evidence may be grounds for remand if it is material; this materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied. . . ." Id. at 551-552. The May 12, 2010 report does not relate to the time period at issue (July 15, 2008, the alleged onset date, to January 25, 2010, the date of the ALJ's decision), as it is dated almost five months after the ALJ's decision. Moreover, Dr. Charlet, without citing to any medical evidence in support of his responses, states that his answers would have been different at another unspecified time during the course of Aycock's treatment Rec. Doc. 13 (Attachment at 2). This evidence lacks materiality and cannot serve as a basis for remand.

Issue No. 4.   Has Aycock failed to satisfy his step four burden of demonstrating that he was unable to perform his past relevant work?

At the December 9, 2009, hearing, the vocational expert testified that, according to the record, Aycock's past relevant work included working as a cashier. R. 17, 36. The ALJ questioned the expert regarding the specific exertional level of the cashier job, and the expert testified that it was light in exertion. Id. The ALJ further questioned the expert to whether an individual could still perform the work of cashier if the person had an RFC for medium work and could not work around heights or dangerous machinery, had slight to moderate limitations in ability to maintain attention and concentration for extending periods, and must miss work once a month. R. 36-39. The expert responded that such an individual could still perform the job of cashier. R. 36-39. The ALJ properly concluded that Aycock's past work as a cashier did not require performance of work-related activities precluded by his RFC. R. 17.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that defendant's cross-motion for summary judgment (Rec. doc. 16) be GRANTED and plaintiff's motion for summary judgment (Rec. doc. 13) be DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 21st day of May, 2012.

_____
**SALLY SHUSHAN**
**United States Magistrate Judge**